### State *vs.* Bernard J. Collins and James H. Gannon.

A representative to the General Assembly, and a mayor and other municipal officers, were voted for at the same election. On opening the ballot-box, envelopes were found containing ballots both for representative and mayor. Pub. Stat. R. I. cap. 10, § 11, permits the

use of envelopes for ballots for representatives. Pub. Stat. R. I. cap. 37, § 17, forbids such use for ballots for mayor.

*Held,* that the warden and clerk rightfully rejected the ballots for mayor found in the envelopes, and rightfully omitted to return such ballots to the city clerk.

*Held,* further, that the proviso in Pub. Stat. R. I. cap. 10, § 11, did not override the prohibition of Pub. Stat. R. I. cap. 37, § 17.

*Held,* further, that the proviso meant that all ballots voted by one voter which could be legally inclosed in envelopes must be put into one envelope.

EXCEPTIONS to the Court of Common Pleas.

At the March Term A. D. 1887, of the Court of Common Pleas, an indictment was found against the defendants as follows :

" The Grand Jurors of the State of Rhode Island and Providence Plantations, and in and for the county of Providence, upon their oaths present : That on the seventh day of December, in the year of our Lord one thousand eight hundred and eighty-six, at Pawtucket, in the aforesaid county of Providence, meetings of the qualified electors of the several wards of the city of Pawtucket in said county, for the election of a representative in the General Assembly of said State, and of a mayor and other municipal officers of said city, having been duly warned and called according to law, were then and there holden, and at the meeting of the electors of ward five of said city, then and there holden as aforesaid, one Bernard J. Collins was then and there warden, and one James H. Gannon was then and there clerk of said ward five ; and that the said Bernard J. Collins and James H. Gannon, both of Pawtucket aforesaid, in the county aforesaid, on said seventh day of December, in the year of our Lord one thousand eight hundred and eighty-six, with force and arms at Pawtucket aforesaid, in the county aforesaid, being then and there respectively warden and clerk of said ward as aforesaid, did then and there maliciously, unlawfully, and knowingly seal up, direct, and send to the city clerk of said Pawtucket a part only of the ballots cast for mayor of said city at said meeting then and there holden as aforesaid in said ward five, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

Preferred by Walter F. Angell, Assistant Attorney General, and signed by fifteen Grand Jurors.

The indictment was found under Pub. Stat. R. I. cap. 10, § 25, as follows :

" Sect. 25. Every moderator, warden, or town, ward, or district clerk, who shall neglect to seal up and direct the ballots, or to send the same, as hereinbefore or by the Constitution provided, or who shall knowingly seal up, direct, and send a part only of the ballots, shall be fined not less than one hundred dollars, nor more than three thousand dollars, or be imprisoned not more than three years, either or both, at the discretion of the court which shall try such offender."

The defendants asked the Court of Common Pleas to quash the indictment because :

" 1. The legally set time for electing representatives in the General Assembly is in April of each year, and as this indictment alleges that on December 7, 1886, there was held an election ' for representatives,' etc., the indictment is bad for not stating whether said election was a special or a called election.

" 2. The indictment alleging that the election was ' for . . . mayor and other municipal officers ' is bad for not specifying what municipal officers were to be voted for.

" 3. The indictment charges the defendants jointly. They should have been severally indicted.

" 4. The indictment alleges that the defendants returned ' a part only of the ballots cast for mayor at said election,' and does not state whether the ballots not returned were ballots legally cast. The indictment should have stated that the defendants returned a part only of the ballots legally cast at said election.

" 5. The voting lists used at said election were signed by Frederic Clark Sayles, Mayor. Said Sayles was not a member of, nor the presiding officer of, the Board of Canvassers, of said Pawtucket. Hence there was no legal election in said Pawtucket December 7, 1886."

The motions to quash were refused, and the defendants excepted.

At the trial before a jury in the Court of Common Pleas it appeared in evidence that at said election, when the ballots were counting, envelopes containing ballots were taken from the ballot-box, and that these envelopes contained ballots both for representative to the General Assembly and for mayor. The defendants, acting on the advice of lawyers present, did not count and did not return the ballots for mayor found in the envelopes.

Pub. Stat. R. I. cap. 10, § 11, is as follows:

" SECT. 11. In all elections for general officers, representatives in Congress, electors of President and Vice-President of the United States, and whenever the vote is taken by ballot in the election of senators and representatives in the General Assembly, the ballots may be deposited in the ballot-box in an envelope such as aforesaid, or without an envelope, at the option of the voter: *Provided,* that all ballots given by any voter on the same voting day, in said election, and in all elections, when enclosed in envelopes, shall be enclosed in one and the same envelope."

Pub. Stat. cap. 37, § 17, is as follows:

" SECT. 17. No envelope shall be used in the election of mayor, aldermen, common councilmen, wardens or ward clerks of cities."

The defendants asked the presiding justice to charge the jury:

" 1. If the jury finds that the ballots unreturned were not legal ballots, the defendants are innocent.

" 2. As an election for representative in the General Assembly was holding, and as the voters had a right to vote for representative in an envelope, the warden and clerk could only assume that the voters knew the law and were only voting for representative, and then when counting the ballots they first discover that there are ballots in the envelopes for mayor, etc., they can only then decide whether to count said ballots or not; and if these facts are proven the defendants are not guilty.

" 3. As the defendants requested and followed legal advice, they are innocent."

The presiding justice refused these requests for instructions to the jury, and charged that, if the defendants knowingly returned a part only of the ballots cast for mayor, they were guilty.

To the refusals to charge, and to the charge given, the defendants excepted. After verdict of guilty they filed in this court an allowed bill of exceptions and a motion in arrest of judgment, because the indictment does not state to whom and where the defendants returned " a part only of the ballots cast for mayor in said election."

*December* 24, 1887. STINESS, J. The question before us is whether the proviso in Pub. Stat. R. I. cap. 10, § 11, allows voting in envelopes for city officers as well as those therein desig-

nated, if they happen to be voted for at the same election. We do not think the proviso was meant to extend this privilege so as to include voting in an envelope for officers which another part of the statute prohibits. The proviso evidently means that in all elections where envelopes are used, each voter shall inclose in one envelope his ballot for all such officers as may be voted for in that way. The purpose is to prevent double voting for one officer. If two or more envelopes were used, no moderator could know that each did not contain a ballot for the same officer. So, if one were in an envelope and one open, there would be no way to determine whether they were duplicates. Hence the statute means that all ballots which a voter may inclose shall be in one envelope ; and then, if there are duplicates, the vote is to be rejected. If the statute were held to mean, as the prosecution contends, that in all elections if an envelope is used all the ballots cast by the voter shall be inclosed, there would be an obvious difficulty in the city of Providence, for example, in case a member of the General Assembly, or representative in Congress, etc., should be voted for at a city election. If, as is customary, only one ballot-box be used, how could it be known whether the envelope of a registry voter contained a vote for members of the city council ? Taxpayers could vote for both classes of officers, registry voters for only one class ; and yet their envelopes would mingle indiscriminately in the ballot-box.

In an election solely for city officers, it is plain that a moderator could not receive ballots in an envelope, for they would be offered in a manner contrary to law. If then, as we think, the right to vote in an envelope is not changed or extended by the fact that another officer who may be voted for in an envelope is to be voted for at the same time with city officers, ballots for these officers in an envelope are equally illegal, and therefore cannot be counted. But if they cannot be counted, we see no reason why they should be returned. It follows, then, that Pub. Stat. R. I. cap. 10, § 25, under which the defendants are indicted for sending a part only of the ballots, must refer to ballots which can be legally received and counted. This is evident, also, from other parts of the chapter. Pub. Stat. R. I. cap. 10, § 14, requires the moderator or warden and clerk to open the envelopes, count the ballots, and announce

the result,[1] and § 15 provides for the rejection of double ballots for the same office. These are illegal ballots, and must be then and there rejected in order to announce the result. For the same reason, other ballots plainly illegal should also be rejected. In doing this, no judicial action is called for on the part of the moderator or clerk. It is simply a matter of inspection. If the ballots do not conform to law, they cannot be received ; or, if received without knowledge of their illegality, as in the case of ballots in envelopes, they must be rejected when their illegality becomes apparent. If they do not conform to the law, they are no votes. We think, therefore, that the warden and clerk had the right to reject the ballots for mayor and other city officers found in envelopes, and consequently that they were not bound to return them.

As we understand the second request to charge, it raises this point. It is quite vague, and, taken strictly, the exception based upon the request might, without impropriety, be overruled. In view, however, of the plain question in the case to which this request was doubtless intended to apply, we think the exception should be sustained. The motions to quash were properly overruled, as the indictment states a case under the statute. The facts relating to the votes in envelopes appear only from the evidence.

*Exceptions to second request to charge sustained. Other exceptions and motions to quash overruled.*

*Clarence A. Aldrich,* Assistant Attorney General, for plaintiff.
*Hugh J. Carroll & Thomas J. McParlin,* for defendants.

---

[1] As follows :

" SECT. 14. After the voting in any town, city, ward, or district, for the officers herein mentioned, or any of them, shall be closed, the moderator and town clerk, or the warden and ward clerk, or the moderator and district clerk, shall, in open town, ward, or district meetings, proceed to open the envelopes and count the ballots; and the moderator shall announce the result, and the clerks of the towns not divided into districts shall give certificates to the persons elected.

" SECT. 15. If any envelope shall contain more than one ballot for the same person, for the same office, or ballots for different persons for the same office, either on the same piece of paper or on different pieces of paper, all such ballots shall be rejected, and not counted."